■ MARVIN RODRIGUEZ, an Infant, by His Mother and Natural Guardian, MAYRA RODRIGUEZ, et al., Respondents, v PRESBYTERIAN HOSPITAL IN THE CITY OF NEW YORK et al., Respondents, and RIVERDALE PAINTING CORPORATION, Appellant. PRESBYTERIAN HOSPITAL IN THE CITY OF NEW YORK et al., Third-Party Plaintiffs-Respondents, v RIVERDALE PAINTING CORPORATION, Third-Party Defendant-Appellant, et al., Third-Party Defendant. [688 NYS2d 120] —Order, Supreme Court, New York County (Harold Tompkins, J.), entered February 26, 1998, which denied as untimely defendant and third-party defendant Riverdale Painting Corporation's motion for summary judgment on both the consolidated complaint and the third-party complaint, unanimously reversed, on the law, the motion granted, and the complaint and third-party complaint dismissed as against such party, with costs against the third-party plaintiffs only. The Clerk is directed to enter judgment in favor of defendant and third-party defendant Riverdale Painting Corporation, dismissing the complaint and third-party complaint as against it.

Any party to an action may move for summary judgment within 120 days after a note of issue has been filed, unless the

court has set a shorter deadline (CPLR 3212 [a]). Court records reveal that Riverdale's motion, in December 1997, was made within 120 days of the September filing of the note of issue. The IAS Court denied Riverdale's motion without reaching the merits, citing contravention of the 30-day deadline it had imposed for substantive motions. But the record reveals no preliminary order setting such a deadline. Nor do the published rules of this particular IAS Part shorten the deadline for substantive motions from that established in the CPLR. The motion was timely, and should have been decided on the merits.

Our review of the record compels the conclusion that the allegations do not support a cause of action against Riverdale for negligence, breach of warranty or strict liability in the third-party complaint, or for negligence in the later amended complaint. In the spring of 1993, Riverdale was contracted by defendants and third-party plaintiffs Presbyterian Hospital (the building owner) and Phipps Houses Services (the building manager) to perform maintenance and repair work on a number of Hospital-owned properties in Manhattan. In the apartment in question (No. 24D at 625 West 169th Street), Riverdale repaired the living room and hallway ceilings and walls, and painted the rooms with non-lead-based paint. Several months later, on October 7, 1993, the City inspected several of Presbyterian Hospital's residential properties and issued an order to abate lead poisoning violations detected in specific locations of apartment 24D, among other places. No mention was made of any violations in the areas previously worked on by Riverdale, namely, the walls and ceilings of the living room and hallway.

Presbyterian Hospital hired an independent consultant (defendant and third-party defendant H. A. Bader Consultants) to inspect the cited areas and formulate a plan of action, and then contracted once again with Riverdale to abate the newly cited violations. Plaintiffs moved out of the apartment while this work was being done. The City inspectors had tagged the specific areas requiring abatement with red stamps. After the work was completed in November 1993, the apartment was inspected by Bader and the City, and pronounced fit for plaintiffs to return.

On August 26, 1994, the City once again inspected apartment 24D, detecting still other lead poisoning violations. None of the specified violations this time matched the work performed by Riverdale on either of the two prior occasions. Although Riverdale submitted a bid on this latest abatement list, Presbyterian Hospital hired a different contractor to do the job.

The original complaint in this action, against Presbyterian Hospital and Phipps Houses Services, was served in June 1994, and alleged negligence resulting in lead poisoning detected in the infant plaintiff's blood on September 20, 1993. In other words, the cause of action could not have been related to allegedly faulty repair work performed in November 1993. At that point, the only involvement by Riverdale (although not yet named as a party to the action) would have been with regard to its repair of the living room hallway and ceilings, and the painting of those areas. In January 1995, a second action, designating Presbyterian Health Resources as the owner of the premises, made the identical allegation as to lead poisoning detected on September 20, 1993. After these actions were consolidated, it was this cause of action (plus a second for breach of warranty and strict liability) that was pleaded over against Riverdale in the third-party complaint in April 1995. Two months later, plaintiffs commenced their direct action against Riverdale by serving an amended complaint in the original, consolidated action.

Riverdale performed precisely the repair work it contracted to do. And if the follow-up inspections be any guide, it performed that work properly. Notwithstanding its expertise in the area of lead abatement, Riverdale had no duty to go beyond the specifications of its contract to detect and warn of other latent hazards or defective conditions (*Stern v 522 Shore Rd. Owners*, 237 AD2d 277, 279). In opposing Riverdale's motion, plaintiffs and third-party plaintiffs had the burden of demonstrating triable issues of fact (*Zuckerman v City of New York*, 49 NY2d 557), namely, by pointing to specific areas where Riverdale had performed negligently. Their failure to do so entitled Riverdale to summary judgment. Concur—Ellerin, P. J., Wallach, Mazzarelli and Andrias, JJ.